v. United States. Good morning, may it please the court, Matthew McLean on behalf of the appellant Nigel Martin. I'm sorry to jump right in, but I noticed that Mr. Martin has been deported, right? That's correct. I think that what is critical to resolving this case is what happened in that determination by immigration. Did immigration just wholesale say, well, he's been convicted of this crime and therefore aggravated felony, he's deported? Or did it engage in its own findings and make a determination by clear and convincing evidence that the crime involved more than $10,000? And I don't know where I can find that. Can you help me with that? I cannot. Unfortunately, that's outside the record. And I don't know the answer to that question. I can only presume that the immigration court found that he pled to an aggravated felony in this case, which was fraud that involved over $10,000. Well, I mean, that's an assumption. We don't have a way of knowing that. I mean, you might well be right. And I think if that's the case, then I think there's a problem. But I think that if immigration undertook an independent analysis and found by clear and convincing evidence that the crime involved more than $10,000 and was therefore an aggravated felony, then it undertook this independent analysis. So it wasn't a foregone conclusion that it was an aggravated felony. That could pose a potential problem. And the problem with this case is that this was resolved without an evidentiary hearing. When did you first learn that your client had been deported? I think he was deported within days of the 2255 denial. I understand that. But my question is, when did you first learn of that? Upon taking the case, I was not the counsel for him at the 2255. I took it over for purposes of the appeal. Don't you think it would have been helpful to point out to the court that, in fact, your I don't think that it is dispositive of the issue. Because what we do is we look at the time that the plea was entered. And that's the focus of this case. So I apologize if I did not provide that information to the court. But he is deported as the government filed in their notice earlier this week. Well, I mean, you'd agree that some of the exigency of an appeal is certainly evaporates once a defendant has been deported. I don't think that it necessarily does, Your Honor. I think the fact that he is deported and could have collateral consequences. What's urgent about it at this moment? The fact that he has an aggravated felony, which he would not have pled had he known. And the fact that he could go ahead and try to reenter the United States. Has he indicated any intention or desire to return to the United States? Yes, Your Honor. I believe that filing this 2255 motion and hiring an attorney to evaluate the immigration consequences as he pled to certainly shows an intent that he wants to remain in this country. There's evidence in the record that supports that he has substantial ties to the United States. He received his education, secondary education, in the United States for an eight-year period. He's young. I think perhaps the most important fact is that he was engaged to a United States citizen, having familial ties to the United States, and being in love with somebody and wanting to stay in the United States with that person is certainly objectively reasonable desires for him to remain in the United States. I think that's only expounded upon that he's going through these steps to go ahead and try to overturn his plea, not knowing at the time that he had pled to an aggravated felony that was going to lead to his automatic deportation. Can I ask you again a little bit more about the deportation? I mean, since it's on a 2255, your client has the burden of proof here. And if your client hasn't proven that the reason he was deported was because immigration just accepted the conviction and decided it was an aggravated felony based on the mere fact of conviction, we can't really consider the fact that he was deported at all, can we? I think it's outside the record, yes, Your Honor. I think on the face of the record, we have a letter from the immigration attorney stating that he pled to an aggravated felony that involved over $10,000, which we know pursuant to U.S. law, that's an automatically deportable offense. So I think there's certainly evidence that would support his position based off the attachments that he was going to be deported based off the amount that he admitted to during the factual proffer that was given by the government. And it's an interesting note that the government attorney at the trial level found this to be a real non-argument. In the response to the 2255, their response was he admitted to, in the factual proffer, to an aggravated felony involving $200,000. One of the problems is there's a big difference between the proffer at plea and the evidence before the court at sentencing. He was involved for almost a year. You go look at the proffer, and he was involved in this activity between, what, March the 19th and April the 6th? Something like that? The superseding indictment says November to August. There's video evidence of him. That's what was put to, that was what the government put forth when he pled guilty. Correct. The fact of the matter is, at sentencing, he was involved in a big criminal conspiracy involving a lot of people that went from November 2015 to, what, August or September the following year. That's correct. Spanning over seven, eight months. Correct, Your Honor. And anybody in their right mind, I say, would have known that that would become an aggravated felony. More than 10,000. They had all kind of people involved. Absolutely, Your Honor. As a matter of fact, but this is not part of the sentencing, some of his cohorts were trafficking counterfeit currency. That's correct. And ultimately, he was responsible. That's how the whole case broke, isn't it? Correct. Correct. And ultimately, he was held responsible for $153,000 in restitution. So this isn't a situation where he's walking in and this is a loss amount that is questionable up to $10,000. A reasonable attorney, under the circumstances as pled, would know that this was going to be an aggravated felony. I think when you look at... Especially if he knew that his client was involved in this sweeping conspiracy over that long period of time, and the plea agreement said the court could take into account any relevant evidence at sentencing. That's correct, Your Honor. Which included all that. That's correct. He didn't plead to the conspiracy count, but he did plead to count two, which encompasses an aggregate amount over a one-year period. So during the sentencing, the defense attorney was saying, well, I want to be able to make these arguments that the loss amount should be $1,000 had he pledged the conspiracy. That's completely contrary to count two, which encompasses an aggregate amount, and again, over a one-year period. And in the superseding indictment, that again goes from November to August, encompassing this entire conspiracy. Where in the record can we find the basis for the determination of the restitution amount? The restitution hearing was not transcribed. There is a restitution order as part of the record, and that's where the amount was. Based off the 2255 motion, as pled, the restitution amount was stipulated by defense counsel. As far as transcripts of that hearing, we do not have in part of this record. But according to 2255, it was stipulated without his consent. When we look at the subsequent part, if we get over the aggravated felony portion of it, did he plead to an aggravated felony, then we look to the record to see did this plea colloquy, this plea agreement, or other statements made during sentencing cure any prejudice. We have decisions directly on point. We cited heavily upon the Ninth Circuit decision in Rodriguez-Vega, which encompasses a very similar sentence. That's the opinion written by Judge Reinhart? Correct, out of the Ninth Circuit. That's not quite in point. Excuse me? I say I don't think that's in point. This case involves a sweeping conspiracy that lasted a long period of time, and that case just involved one crime. Correct. That involved a deportation consequence. In my view, and there's no way in the world a lawyer could competently tell the defendant in this case whether or not he would be sentenced in effect or convicted of an aggravated felony. I believe that . . . The lawyer would have to have all of the sweeping evidence that the district court would entertain at sentencing, and then come to some kind of a conclusion. I don't know how in the world at the time of a guilty plea the lawyer could possibly do that. I think it's pretty simple, the fact that the factual proffer stated that Capital One has submitted loss amount of over $200,000. I understand that, but the indictment and what was going to be before the sentencing judge went far beyond the little skinny, I call it skinny, factual proffer that the government made at the plea. And we don't have a situation here, as I understand it, that he made an involuntary plea because he pled to something small and he was sentenced to something large. I believe that we . . . on a representation that all this other information was not going to be used by the sentencing judge. The involuntary plea came from the perspective that had he known that deportation was going to be mandatory, we believe that it is reasonable for an attorney . . . But they're not claiming an involuntary plea here. We're talking about ineffective assistance. Correct, which invalidated the plea in the case. I understand. Okay. Thank you, Your Honor. Save some rebuttal time. Thank you. Ms. Dalzell. Yes, good morning and may it please the Court. I'm Catherine Dalzell on behalf of the United States. I think it's important to remember that we're here on a 2255 Certificate of Appealability and it's limited to a Strickland claim of ineffective assistance of counsel. And here, this Court can affirm, because even assuming there was deficient prejudice, even if we just take that assumption for the sake of argument, Mr. Martin cannot show prejudice on this record. And that is because regardless of what his attorney advised him, he said . . . Are we limited to the prejudice issue? No, the Court is not. The COA of whether it was ineffective. Correct, correct. What I can't understand is how in the world could a lawyer, without guessing, have said to the defendant when he pled guilty, given the overarching criminal activity that was involved, which was beyond the factual statement that the government presented to the court at plea, but it was known because of the charge in the indictment, for heaven's sake. What the court would do at sentencing. The lawyer couldn't know that, could he? I agree with that, Your Honor. And in this case, that kind of gets back to the point of what the defendant said in his plea and at the plea colloquy. Before you get to that, I do want to focus on deficient performance first. Sure. Because I'm not sure that . . . I think if there is deficient performance, then there might be a problem. I think there might be prejudice. So let's talk about deficient performance. Your colleague says that there was deficient performance because even though the indictment said that he was pleading to conduct of obtaining anything in value aggregating $1,000 or more in two different counts, so maybe as much as $2,000 or more, that necessarily counsel should have known that the amount involved was going to be more than $10,000, which would have made it an aggravated felony because the factual proffer included an amount of $100,000 plus. Do you disagree with that? And if so, why? And related to that question, is the factual proffer by agreeing . . . So that's a higher standard than clear and convincing evidence before immigration. Does that present a problem for the government? If you want to address all of those, that would be great. Thank you. Sure, sure. I'll first say, again, I think the easiest route for this court is to rule on prejudice, but I do want to answer your question. So on the deficient performance prong, here he did not plead to something that was obviously going to be an aggravated felony on its face. There was a reference to $200,000 plus in the factual proffer that was part of the plea. I agree with that. But nothing in that plea or the factual proffer linked it to Mr. Martin specifically. Mr. Martin still had to be held responsible for some amount of loss for his particular conduct. And, in fact, at sentencing, the government was clear that Mr. Martin was the least culpable out of all of his friends involved in this conspiracy. The government said he came in at the tail end. He was only involved for about a month. And for that reason, the government filed a 5K motion for a downward departure. He got 12 months instead of, I believe it was going to be 36 to 42 months otherwise. So there was nothing that told him or his defense counsel or the court at the time that he was necessarily going to be held responsible for over $10,000. I'm sorry. Can you remind me of what the district court held him responsible for? At sentencing, I believe the district court made a finding that for PSI purposes, for the related conduct purposes, it was $210,000. And then separately at the restitution hearing, he held him responsible for around $150,000. And that amount was roughly the same as, I mean, the restitution amount, the same as the amount in the factual proffer, right? I believe in the factual proffer, it was just the whole amount of the conspiracy, the loss to Capital One, which is about $210,000. So the restitution amount that Mr. Martin was held responsible for was for somewhat less than that. And as my opposing counsel said, we don't have the restitution transcript here in the record. So I don't know what the genesis of that number was. Was the sentencing amount then the same as the proffer amount? Yes. So that's, I mean, that seems like maybe it's a problem. I disagree because, again, the court still had to determine what Mr. Martin's specific conduct was. And in the factual proffer, it listed certain transactions that Mr. Martin himself did. You know, I think one was for $300, one was for $900 something. So if you take those individual transactions that were specifically linked to Mr. Martin, as his defense counsel noted, they added up to only approximately $1,100, which is why his counsel objected to the PSI finding and said, you know, look, he's only responsible for this small amount, which gets us back to this was not an aggravated felony on the face of it when he pled guilty. Except that he pled guilty and accepted a proffer to $200-and-some-odd-thousand, right? Again, but that was not linked specifically to him at the time. I would also note, and it might be helpful to think about... But then how can he plead guilty beyond a reasonable doubt that the government would have established it with respect to what he was pleading guilty to? Well, that was for relevant conduct for purposes of the PSI. And again, I don't know that it was necessarily linked to Mr. Martin specifically. In fact, I think it wasn't. But even if it were, which again, we would dispute that, even if it were, the immigration court is not bound by that. I think that was alluded to during the last argument. And there's case law in our brief, including from the U.S. Supreme Court, saying that... You're saying they're not bound to it because at sentencing it's established by a preponderance of the evidence. And that's all that matters. It doesn't matter that when given the factual proffer, the government would say we would prove beyond a reasonable doubt because the defendant is not admitting the facts and the proffer could be proven beyond a reasonable doubt. Well, and it is a different analysis as well in the immigration proceedings. Because at the sentencing part in the criminal case, the question is relevant conduct. And this court has held in Obechuen that that's a much broader concept than what a defendant is held responsible for in terms of victim loss in an immigration proceeding. And that's because relevant conduct can include conduct that was not charged, acquitted conduct, a whole host of things. Whereas in an immigration proceeding, as we noted in our brief, the government has to prove by clear and convincing evidence that the defendant was responsible for this particular amount of loss. So again, in the immigration context, they're just not bound because it's a different analysis. And even restitution orders, there's a Third Circuit case, for example, saying that immigration courts are not bound by restitution orders because, again, it's a different analysis. So it wasn't an aggravated felony at the time because the plea agreement didn't tie any amount to Mr. Martin. Specifically, he had the opportunity to litigate that and even a second opportunity to litigate that in the immigration context. Just as a matter of housekeeping, though, and I'm sorry I seem to be stuck on this, but I'm not really sure what to do with it. What do we do with the fact that there is this factual proffer where the government says we would prove the following beyond a reasonable doubt? And actually, the petitioner in this case agrees to those facts and his counsel doesn't say, well, we're agreeing with everything except the loss amount. What do we do with that? How do we decide that that's not relevant? Because that's what we have to do, don't we? I mean, we have to decide that doesn't matter to the analysis because if we get to the sentencing part, then I think you're right. But what do we do with that part? With that part, again, with the court's indulgence, I would like to switch to the prejudice prong just because ultimately I don't think it matters. You're welcome to spend your time however you want, and you might convince me that there's no prejudice. But I think your better argument is that there wasn't deficient performance. But you can spend your time however you want. This is what's troubling me on the deficient performance part. Right. So on the deficient performance, another way to think about this, I think, is would it have been deficient for his counsel to advise him that deportation is mandatory if he pleads guilty to this offense? Or he could have said, as the Supreme Court has said, that it is likely mandatory. Likely mandatory. Right? Right. It's very possible that that could have been considered deficient performance. Because if you think about what would have happened, A, that would have been inaccurate for the reasons I've been stating. Because I don't think that this was necessarily going to become an aggravated felony at the time of the plea. But in addition, there was overwhelming evidence of guilt here. It could have pushed him into a trial with overwhelming evidence of guilt. And it actually could have put him in a worse position for deportation purposes. Because at that point, with the overwhelming evidence of guilt, he could have been found guilty of all three counts, including the conspiracy count. He would have been much more limited in his ability to dispute the loss amount that is attributable to him specifically. And he would have lost all the plea benefits, including the adjustment for acceptance of responsibility. I would agree with you, right, if his counsel had said during the proffer, we agree with everything except the loss amount. Then I think you would be on completely solid ground. I still don't know what to do with the loss amount in the proffer. That's what I need some help with. So in the proffer, again, I would just circle back to, it just says that the capital one loss amount is what it was. It was $200,000. But there were multiple people involved in this conspiracy. Mr. Martin didn't plead to the conspiracy count. He only pled to the substantive counts. And the factual proffer only linked very small amounts with Martin specifically. So while it's true that the factual proffer said that this entire conspiracy cost capital one, this large amount of money, it doesn't follow necessarily from that that Mr. Martin is responsible for that, especially because, as the government said during sentencing, he came in at the tail end. He was the least culpable. He was involved in the fewest amount of transactions. These are all in the sentencing transcript record. So that would be, I think, the best answer. So your point is he admitted that, yes, the bank experienced this loss, but he wasn't admitting that he was responsible for the loss. Is that what your position is? Correct. And correct. Isn't the argument here that you're trying to shoehorn the petitioner, an ineffective assistance of counsel claim into an involuntary plea? Isn't that the gist of what they're talking about as an involuntary plea? He may be. He knows he's put on notice, and he understands that at sentencing the court can do all sorts of things. His lawyer couldn't predict anything. The court couldn't predict. That's the way the nature of the beast is. And the government couldn't guarantee anything. The government could make a small plea proffer, but it doesn't have any effect on what's going to happen at sentencing. Correct. And what he's in effect saying, as I understand, actually trying to say, is that his plea was involuntary because without an ironclad guarantee that at sentencing the court would not take into account the sweeping crime elements, he wouldn't have pled guilty. Mr. Martin is trying to claim on appeal that if . . . It's an ineffective assistance claim. Right, yes. What he's in effect saying, as I see it, is that I would not have pled guilty, notwithstanding the things I said in the colloquy, that the court could take all kinds of things into account. His lawyer couldn't advise him because he couldn't know. Correct. But I would not have pled guilty if at the end of the day, because of what the court did at sentencing, the immigration court would say it's an aggravated felony. Now, isn't that what we're talking about here? Well, he may be . . . But he didn't make it involuntary. There's no COA. The COA is limited to a Strickland claim. It's on ineffective assistance. Yes. It's not on involuntary plea. That's correct, and he cannot prove prejudice on this record because . . . I understand, but isn't that what he's in effect saying? I would not have pled if at the end of the day, as a result of the court's sentence, immigration would order me deported. He's saying, yes, what he's saying is that if I had known I would be subject to automatic removal, I would have gone to trial, which is the exact logical opposite of what he said in his plea agreement, which was . . . He wants to be locked in to the episodes that occurred in March and April of 2015, right, or 16. That apparently is what he would like. That's all that I pled to. Right, but that's not the analysis. I understand that, but he was warned what might happen in sentencing, and he understood that it may include more than the loss that occurred in March and April of 2016. He was not only warned that . . . It's right there in the transcript, his words. Right. But what I'm saying is, as I perceive his argument, is the plea was involuntary because I never would have pled guilty had I known this might happen. That may be what he wants to argue. That's beyond the scope of the COA here. I know he can't argue that, but that's the heart of what he's arguing, is it not? Right, and again, it's refuted by his plea agreement. In an ineffective assistance of counsel context, that's his argument. Correct. In my view, there's no way in the world the lawyer could have told him that at sentencing, you may be held accountable for far more than these episodes in March and April. Correct, I agree. And the sentence will be such and such. I agree. And immigration is going to deport you. I agree. There's no way his lawyer could have told him that.  Again, he . . . You'd have to have a crystal ball. He stated, even if the consequence is automatic removal, I choose to plead guilty. He is saying the exact opposite now. That is why you can't . . . Which is why, in my view, in these kinds of cases, you cannot . . . The ineffective assistance of counsel argument, in terms of performance, is unfair to the lawyer because the lawyer can't possibly have a crystal ball, look down the road at the end of the criminal case, and then say, well, you're going to be deported automatically. Correct, I agree. There's no way this lawyer could have predicted . . . The only argument, in my view, if I were representing the petitioner, I would have said the plea was involuntary because I never would have pled in the first place. That may be what he could have said, but he can't on this record because he said . . . In other words, I'll set it another way. Given that my lawyer could not be charged with ineffective assistance . . . Correct. Because he didn't have a crystal ball . . . Correct. Okay. Given that I don't . . . I can't expect that from him, if it turns out that I'm held responsible for more than such and such, I wouldn't plead guilty. Correct, but even if that were his claim, even if his claim were it was involuntary, again, he said definitively and unequivocally here in his plea agreement, even if the consequence is removal, automatic removal, I want to plead guilty. He can't now come before this court on any claim, on a Strickland claim, on an involuntariness claim, and say the exact opposite, which is if the consequence is automatic removal, I want to go to trial. Those are opposites. That is why he cannot have a prejudice claim here, and for that reason alone . . . He can't have it in effect. He can't have a . . . I say he can't . . . Correct, correct. His lawyer was ineffective in terms of his performance. Correct. I agree. I agree. On either ground, his claim is foreclosed here, based on this record. If the court has no further questions, I would ask that the court affirm. Thank you. Mr. McClain. Thank you, ma'am. Please, the court. Can I start by asking you a question? Yes, Your Honor. Your colleague said that the factual proffer doesn't really matter here, because even though the factual proffer said that the conspiracy as a whole had a loss amount in excess of $200,000, your client, Mr. Martin, did not agree that that had anything to do with him specifically. In fact, when you look at the factual proffer, he agreed that he was responsible for, on March 21st, $782 worth of items, and on March 29th, $369 worth of items. So if that's the case, then why should the fact that the conspiracy count resulted in $200,000 matter here, since your client didn't plead to the conspiracy count? He didn't plead to the conspiracy count, but he pled to count two, which talks about an aggregate amount occurring over a one-year period of time. And the superseding indictment charged the November to August dates. So count two encompasses this entire conspiracy, just as count one does as well. And when we look at the parties that litigated this case below, everybody seems to agree that he pled to an aggravated felony, reading from the government's response, which was written by the trial counsel to the 2255. Further, contrary to Mr. Martin's assertion, it's on page seven, the facts of his conduct in this case aid in the bet of loss in excess of $10,000 is clearly shown in the factual proffer, which indicates that the conspiracy caused a loss in excess of $200,000. So the argument below in the 2255 proceedings at the trial level, the government wasn't making the same argument. They essentially, in my opinion, conceded the fact that this was an aggravated felony. And when you look at the district judge, which was the same judge that accepted . . . The issue of whether it was an aggravated felony was not before the district court. It was . . . Not before the district court and not here. The argument is his lawyer was ineffective. Correct. Do you agree with me that the lawyer could not, in a performance standpoint, have been ineffective? I do not agree with that. You won't agree with that? Then the lawyer should have had a crystal ball. Is that what you say? I'm saying that because . . . Can you answer that question? The lawyer should have foreseen what would happen at sentencing. Had the $200,000 amount not been factually stipulated, I would agree with your position. Forget about the plea agreement. You have to concede, I would say, that the lawyer couldn't possibly foresee for sure what the court would do at sentencing. I think he did foresee, and that's the reason why he stipulated to the loss amount being $200,000 and the factual proffer. Had he not done that, I think that this case would be different because then it would be . . . Could this attorney have predicted that? An attorney and a defendant who doesn't stipulate to the loss amount, then that would be a fair argument to make. You're in effect saying, are you not, that he would not have pled guilty if he knew what occurred at sentencing would happen? That is correct, Your Honor. Okay, so he's basically saying his plea was involuntary. Because he received an effective decision of counsel, which is in line with the Padilla decision, which is in line with the Rodriguez-Vega, which is in line with Murillo as well. The reason I'm engaged in this dialogue with you and the government is that I can't perceive us writing an opinion in a case like this involving somebody who could be removed in one of these criminal cases and somehow charge the lawyer with an ineffective performance under Strickland, ineffective performance, because the lawyer did not foresee that the court would treat what was admitted at plea, which was enough to hold him convicted of the crime, would have a consequence of deportation. And, Your Honor, perhaps the fair thing to do, again, this was denied without an evidentiary hearing. So the lawyer would have to, a competent lawyer would have to say always don't plead guilty. I wouldn't say that. I would say that under this standard that we are today,  the record has to inclusively refute the claim. So if this court accepts the position that we have today, the proper remedy is to remand it back to the district court to hold an evidentiary hearing where the attorney might very well argue I couldn't have foreseen a loss amount in excess of $10,000. And Mr. Martin would have the right to go ahead and confront the attorney as to how could you not foresee that when you had your client stipulate to the fact that there was loss of capital one in excess of $200,000. Let me ask you, as a practical matter, if we granted the relief you're seeking, namely a remand for an evidentiary hearing, how would that work? Would the government be required to bring Mr. Martin back? And that's something that I've thought about as well. There also could be video appearance or some other sort of means to have his presence at the 2255 evidentiary hearing. But, Your Honor, that would be something that we would address at the lower level in working out with the government. All he would say if he was brought back is, I would not have pled guilty at all. Because a lawyer would have told me what was in the plea agreement that at sentencing the district court could take into account far more activity than was in the plea proffer. Your Honor, he would testify that. That's what he would say. Correct. And where's the contemporaneous evidence during the plea proceeding that Mr. Martin wanted to avoid deportation? The evidence, there is none. He said yes, sir, no, sir, to all the judge's questions. However, in the 2255 pleadings, he has presented evidence that he spoke to his immigration attorney. Mr. McClain, if he had told the judge at the plea hearing that I'm concerned about being deported and I know that at sentencing such and such might happen and that would cause me to be deported, I don't want to plead. And the court would not have accepted the guilty plea. Would you agree? I would agree with that, Your Honor. So, in effect, he invited the court to take the guilty plea. I think because he was told that deportation was a mere possibility instead of mandatory, as cited in Rodriguez-Vega. It turned out to be very mandatory. Exactly, Your Honor. Yes, Your Honor. Thank you. We ask the court to remand for an evidence hearing. Thank you. Thank you, Mr. McClain.